## Archibald Love et al. v. E. G. Culver Payne.

*Partnership—Ratification of Sale of Interest.* — It is an elementary rule that a third person can not, by buying the interest of one partner, become a member of the firm, unless all the partners consent; and so the act of such purchaser can not bind the firm, unless the other partners know of the purchase and retain the money paid, after such knowledge, in the common fund, thereby constituting him a member of the firm. But even if money is taken into the common fund, this will not be a ratification so far as the other partners are ignorant of the contract. Where there is no express notice, ratification can not go beyond an adoption of the acts of an agent assuming to represent the firm to the extent fairly and reasonably implied from the nature of the transaction; and so a mere receiving of a purchaser of a partner's interest into the firm by taking his money into the common fund, does not ratify a guaranty of perfect title, free from all liens, made to the purchaser by the seller.

Filed April 25, 1881.

Appeal from Clay Circuit Court.

(Record not available.)

Opinion of the court by Mr. Justice Elliott.

The Limited Liability Coal Company was the firm name of a partnership of which all the appellants were members, and this action was instituted by the appellee against the appellants as members of said partnership. The complaint alleges that the said company entered into a contract with appellee wherein it was agreed that in consideration of appellee's purchase of the interest of one William Blair and payment of a certain sum into the partnership he should be admitted as a partner, and that he should receive one-fourteenth interest in said partnership property free from all liens. The breach assigned is that he did not receive such interest, but that the firm suffered all the partnership property to be sold upon a prior mortgage and that he really received nothing at all of value.

The only assignment of error discussed is that based upon the ruling denying a new trial. The appellants insist that they are entitled to a new trial because of erroneous instructions given the jury.

A very brief synopsis of the evidence will be sufficient to exhibit the questions presented upon the instructions. The appellants were all members of the partnership; John Elliott was the president

and general business manager of the company. The company was engaged in the business of mining and selling coal; William Blair was a member of the firm; and appellant bought his interest. The appellee did contract with John Elliott that if he, appellee, would buy Blair's interest and pay into the partnership $285, he should receive one-fourteenth interest in the partnership property, free from all liens, and this agreement was made by Elliott while assuming to represent the firm. There was a breach of the contract. We have stated the general effect of the evidence in the form most favorable to the appellee in order that the legal questions presented by the instructions may be plainly exhibited.

The record instruction asked by the appellee and given by the court is as follows: " If you should find from the evidence that one John Elliott was a member of the Limited Liability Coal Company, and was acting as president of said company and while so being a member thereof and acting as such president he made a contract with the plaintiff on behalf of said company whereby the plaintiff became a member of said firm, and in consideration thereof it was agreed that the plaintiff should pay into said firm a given amount of money, and that said company received this plaintiff as a member of said company and accepted the benefits of said contract, they can not hold the benefits and at the same time deny the authority of said Elliott to make the same."

This instruction does not assert, as appellants affirm, that Elliott had a right to bind the partnership because of this authority derived from his relationship to his co-partners. If it did, it would be clearly enough obnoxious to the objections pressed against it. The proposition is not that Elliott had, as partner, a right to make the contract, but that because the firm received and appropriated the benefits resulting from the act of one assuming to represent the partnership the partners are liable. The admission of a partner into a firm is not within the line of partnership business, and Mr. Elliott would have had no authority, as partner, to contract with appellee that if he would come into the firm the partners would vest in him a title to one fourteenth of the partnership property free from all liens. It is the elementary rule that a third person can not, by buying the interest of one partner, become a member of the firm unless all the partners consent.

3

Regarding the instruction as declaring that the partnership was bound by Elliott's acts, not because he was a member thereof, but because he professed to act for the firm and the fruits of his acts were received and enjoyed by the partnership, it must still be declared to be erroneous. It is erroneous, because it leaves out of consideration the essential element of knowledge on the part of the members of the partnership. The mere coming of appellee into the firm and the payment of money into the capital stock, would not, of itself, charge the firm with knowledge of the agreement that he should receive one-fourteenth of the property free from all incumbrance. The natural inference in the absence of notice would be the reverse, for the reasonable conclusion would be, that he stepped into the place of the partner whose share he bought, taking with it all its burdens and benefits. The instruction broadly asserts that the partnership would be bound by accepting the benefit of the contract, and no mention is made of notice or knowledge, on the part of the partners, of the contract of the president and agent, to vest in the incoming partner a title to one-fourteenth of the property free from the liens then known to exist. The only benefit which the partnership got, or could have got, from the appellee, was the payment of the balance due upon Blair's share of the capital stock of the partnership; if Blair had remained a member he could have been compelled to pay it, and Culver did no more than what his vendor, the retiring partner, was bound to do. Unless the partners had knowledge of the contract under which Culver came into the firm, they can not be deemed to be bound, because the former paid his proportionate share of the common contribution to the capital stock. The benefits which the partnership retained were only those which Culver would have been bound to yield as a right to admission, and without some knowledge of a contract made by a professed agent, giving Culver a right to look to the partnership to convey to him a perfect title to a part of the partnership property, such a contract ought not to held obligatory upon the partnership. The partners can not be bound unless they retained the money after knowledge that a professed agent had, in their behalf, agreed to give the incoming partner an additional or distinct consideration from that arising from the sale to him of the retiring partner's interest and his admission as a member of the firm.

The appellants, by accepting Culver as a co-partner, and by receiving into the common fund his money, did undoubtedly ratify, to some extent, the acts of Elliott, but not to the extent declared by the instruction. The ratification implied from such acts can not be so extended as to cover a distinct and independent contract made by the agent, and of which the principals had no knowledge. If such a contract was one implied in the admission of Culver into the firm, or was an ordinary incident of such a transaction, then the doctrine of ratification might apply. But the contract upon which appellees seek a recovery was not implied in, nor incident to, the purchase of Blair's interest and Culver's admission into the firm. By receiving Culver and taking his money into the common fund, appellants did not ratify a contract of which they were utterly ignorant, and which was not incident to, nor implied in, the admission of Culver as a member of the partnership. The agreement of Elliott guarantying, as in effect it did, that the appellee should receive a perfect title, was totally distinct from the purchase of Blair's interest and Culver's admission as a partner in his stead; and could not be implied from Culver's coming into the partnership and paying his money into the common fund. Ratification where there is no express notice, can not extend beyond an adoption of the acts of the agent to the extent fairly and reasonably implied from the nature of the transaction; and in this case the nature of the transaction would have indicated nothing more than that Culver had taken Blair's place in the firm. To this extent only can it be said that retaining in the common funds the amount paid by Culver is a ratification of Elliott's acts.

Other questions are discussed, but as the cause must be remanded for a new trial, we deem it unnecessary to consider them.

Judgment reversed at costs of appellee.